# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**WILLIAM MCKENNA,**

    **Plaintiff,**

**v.**                                                                                          **Case No.  8:05-cv-2200-T-30MSS**

**GARY P. FOLEY,**

    **Defendant.**

_____/

## **ORDER**

THIS CAUSE comes before the Court upon Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. #12).[1] The Court, having reviewed the motion, memorandum in support, Defendant's answer to the Complaint, and being otherwise advised in the premises, finds that Plaintiff's motion should be granted as to Counts II and III of Plaintiff's Complaint.

### **Procedural Background**.

On December 1, 2005, Plaintiff, William McKenna ("McKenna"), filed a three count Complaint (Dkt. #1) against Defendant, Gary P. Foley ("Foley"), based on the following grounds: Count I - Breach of a Third Party Beneficiary Contract; Count II - Civil Theft; and Count III - Conversion.  In response, *pro se* Defendant Foley filed an answer responding to

---

[1] The Court notes that Defendant failed to file a response to Plaintiff's motion for summary judgment.

the allegations contained in the Complaint. Defendant admitted that Paragraphs 6-26, 29-31, and 36-44 of the Complaint "are true to the best of my knowledge."[2]

**Facts Admitted By Defendant in Answer**.

Between 1983 through 2003, Foley worked for the United Parcel Services ("UPS"). Sometime in 1998, Foley advised his friends and family that UPS, a privately held company at the time, was allowing the relatives of employees to purchase stock through the employee. Foley offered McKenna, his brother-in-law at the time, the opportunity to purchase UPS stock through him. McKenna accepted Foley's offer and transferred to Foley approximately $100,000.00 to purchase UPS stock. Foley subsequently purchased UPS stock, which also included some shares of a related UPS entity known as OPL.

Shortly after Foley's purchase of the UPS stock on behalf of McKenna, Foley prepared to transfer the stock from his name to McKenna's name. On or about January 14, 1999, Foley and McKenna executed a Request for Change or Ownership of Capital Stock to effectuate the transfer of title of the UPS and OPL stock to its proper owner, McKenna (the "1999 Request")[3]. The 1999 Request was subsequently submitted to UPS. UPS refused to honor the 1999 Request, because, at the time of submission of the 1999 Request, UPS placed a freeze on the transfer of UPS and OPL stock due to its upcoming public offering. Accordingly, the UPS and OPL stock remained titled in Foley's name.

---

[2] See Dkt. #10, Page 2.

[3] See Dkt. #1, Page 12-13.

Over the next several years, the number of shares of OPL[4] and UPS stock increased due to stock splits and dividend re-investments. By 2002, McKenna's UPS stock totaled 4,340 shares.

In 2002, Foley and his wife, Maryanne Foley, filed for divorce. On August 29, 2002, the Superior Court, in and for Fulton County, Georgia, entered a Final Judgment and Decree of Divorce (the "Final Judgment")[5] in the case styled *Maryanne Foley v. Gary P. Foley*, Case No. 2002CV53022. Attached and incorporated into the Final Judgment was a Marital Settlement Agreement (the "Marital Settlement Agreement"),[6] executed by Maryanne Foley and Gary P. Foley. Pursuant to the terms of the Final Judgment, "[t]he Marital Settlement Agreement between the parties executed on the 29th day of August 2002 is hereby approved and incorporated herein by reference as the final judgment of this Court in this action as if each term thereof were quoted verbatim herein." The Final Judgment states that "[t]he parties are ordered to comply with each and every term of said Marital Settlement Agreement."

The agreement sets forth the negotiated distribution of all material property. Pursuant to Paragraph 10 of the Marital Settlement Agreement, "[t]he United Parcel Service stock remaining upon payment of the outstanding debts of the parties as set forth in Item 11 of this

---

[4] Plaintiff admits that Defendant complied with the provisions of the Marital Settlement Agreement that required Foley to transfer the OPL stock to McKenna, and therefore, Plaintiff does not seek relief as to the OPL stock.

[5] See Dkt. #1, Page 14-17.

[6] See Dkt. #1, Page 18-39.

Agreement will be divided as follows: FOUR THOUSAND, THREE HUNDRED FORTY (4,340) shares will be transferred to Wife's brother-in-law, William McKenna." The requirement to transfer the 4,340 shares of UPS stock to McKenna was put into the agreement by Foley and Maryanne Foley in recognition of McKenna's ownership interest in the UPS stock ("McKenna UPS Stock").

Between the months of June and July 2003, Foley and McKenna executed a Request for Conversion of Class A Stock to Class B Stock and Transfer of Ownership (the "2003 Request")[7] to transfer title of the McKenna UPS Stock to McKenna in recognition of his ownership of the stock and in compliance with the terms of the Marital Settlement Agreement.

However, the McKenna UPS Stock no longer existed, because Foley sold the McKenna UPS Stock on July 2, 2003. Foley sold the McKenna UPS stock for $64.20 a share and realized a total of $278,628.00 from the sale. Foley kept the proceeds from the sale of the McKenna UPS Stock for himself.

On January 23, 2004, the Final Judgment was domesticated in the Circuit Court of the Sixth Judicial Circuit, in and for Pinellas County, Florida, pursuant to Fla. Stat. §55.501. Subsequently, McKenna filed a Motion to Enforce the Judgment seeking to enforce the incorporated Marital Settlement Agreement against Foley and compel Foley to turn over the McKenna UPS Stock or its cash equivalent, plus interest and fees.

---

[7] See Dkt. #1, Page 40-41.

On June 28, 2005, the Circuit Court of the Sixth Judicial Circuit held an evidentiary hearing on the motion.[8] On August 9, 2005, the state court entered its Decision of Court denying McKenna's motion on jurisdictional grounds.

Although repeated demands have been made to Foley for the return of the proceeds from the sale of the McKenna UPS Stock, Foley has refused to turn over the funds. On August 18, 2005, McKenna served a letter upon Foley pursuant to Florida Statutes, Section 772.11, requesting an immediate return of the proceeds realized from Foley's wrongful sale and retention of the McKenna UPS Stock. Foley did not respond to McKenna's civil theft letter.

**Facts Admitted in Evidentiary Hearing Transcript Dated June 28, 2005**.

During the June 28, 2005 evidentiary hearing, Foley acknowledged the following material facts: the marital settlement agreement required him to transfer [approximately] 4,400 shares of UPS stock to Mr. McKenna (Page 72, Lines 14-17); Foley offered McKenna the chance to buy UPS stock through him (Page 73, Lines 6 -18); McKenna took advantage of Foley's offer (Page 73, Lines 19-21); McKenna gave Foley money to buy UPS stock on McKenna's behalf (Page 73, Lines 22-24); Foley bought stock on behalf of McKenna (Page 75, Lines 1-5); in 1999, Foley attempted to transfer the stock to McKenna, but was unable to transfer it because UPS stock was frozen as the result of an impending IPO (Page 75-76);

---

[8] The transcript of the June 28, 2005 Evidentiary Hearing on Plaintiff's Motion to Enforce the Judgment has been filed in support of Plaintiff's Motion for Summary Judgment. The Court notes that both Plaintiff and Defendant appeared at the evidentiary hearing. Both parties were sworn in by the presiding judge. Accordingly, this Court will construe the June 28, 2005 evidentiary hearing transcript as an affidavit. See Dkt. #13-2.

Foley admits that although the UPS stock was under his name, the UPS stock "technically" belonged to McKenna (Page 77, Lines 1-9); Foley admits that he liquidated the UPS stock in early July of 2003 (page 78, Lines 19-24); Foley admits that he kept the proceeds from the sale of the UPS stock after he liquidated the stock (Page 78-79); Foley admits that he decided not to transfer McKenna's share of the stock to McKenna because he was angry that "Mrs. McKenna made several phone calls to my employer indicating that I had tried to throw my wife downstairs in 1994, [and] that I had hired a hit man to take her out post divorce settlement" (Page 80, Lines 4-17); Foley admits that he never transferred any of the proceeds of the UPS stock to McKenna (Page 85-86); Foley admits that he spent all of the proceeds received as a result of selling the UPS stock (Page 86, Lines 10-15); and Foley admits the decision not to transfer the UPS stock was his alone (Page 87, Lines 1-4).

### Motion for Summary Judgment Standard.

A summary judgment is appropriate only if this court finds that there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleading, depositions, answers to interrogatories, admissions on file, and any affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e)

requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exists a genuine issue for trial. Celotex, 477 U.S. at 324. The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any..." in deciding whether to grant or deny a summary judgment motion. Fed.R.Civ.P. 56(c). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to the party's case, then an entry of summary judgment is appropriate. Celotex, 477 U.S. at 322-23.

**Discussion**.

**I.     Count I - Breach of a Third-Party Beneficiary Contract.**

Plaintiff seeks summary judgment in his favor and against Foley for breach of a third-party beneficiary contract. The third-party beneficiary contract at issue is the Marital Settlement Agreement executed by and between Defendant, Gary P. Foley, and non-party, Maryanne Foley, dated August 29, 2002. Specifically, Plaintiff seeks to enforce Paragraph 10 of the Marital Settlement Agreement which states, in pertinent part:

> The Parties agree to divide equally all United Parcel Service stock, Overseas Partners, Ltd. stock, United Parcel Service stock in Merrill Lynch Account Number 820-10889, and the stock pledged as security for the Merrill Lynch Credit Corporation loan and the Wachovia Bank of Georgia loan. Within thirty (30) days of the final Judgment and Decree of Divorce, Husband shall sell United Parcel Service stock in an amount sufficient to pay the debt listed in Item 11 below and apply the proceeds immediately to the payment of the same.
>
> The United Parcel Service stock remaining upon payment of the outstanding debts of the parties as set forth in Item 11 of this Agreement will be divided as

> follows: FOUR THOUSAND, THREE HUNDRED FORTY (4,340) shares will be transferred to Wife's brother-in-law, William McKenna. The remaining United Parcel Service stock will be equally divided between the parties. Wife shall designate whether shares of United Parcel Service stock shall be transferred into her name or liquidated. In that event, Husband shall execute any and all documents necessary to effect transfer of said shares of stock to Wife.[9]

In short, both Foley and his ex-wife, "the Parties" agreed to divide equally all UPS stock, and to transfer 4,340 shares to William McKenna. While it appears Foley had complete control over the transfer and liquidation of the UPS stock, his wife maintained an interest in the division of such stock. Upon a review of the proffered third-party beneficiary contract at issue, it appears that a judgment rendered in Maryanne Foley's absence may be prejudicial to her. The relief sought by Plaintiff may necessarily include the enforcement of the terms of the Marital Settlement Agreement against both parties to such agreement (Gary Foley and Maryanne Foley). Further, if the terms of the Marital Settlement Agreement have been breached, then both parties should be afforded the opportunity to protect their respective interests. For these reasons, Maryanne Foley is an indispensable party to this cause of action.

Accordingly, Count I of Plaintiff's Complaint should be dismissed without prejudice for failure to join an indispensable party pursuant to Rule 19(b) of the Federal Rules of Civil Procedure.

**II.     Count II - Civil Theft (Fla. Stat. §812.014 and §772.11).**

---

[9] See Dkt. #1, Pages 30-31.

In order to establish a claim for civil theft, the claimant needs to prove, by clear and convincing evidence, that he has been injured by a violation of Fla. Stat. §812.014. Section 812.014 states, in pertinent part:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with the intent to, either temporarily or permanently:
> (a) Deprive the other person of a right to the property or a benefit from the property.
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.[10]

Plaintiff offers Foley's voluntary admissions in support of his civil theft claim. Foley admits that in 1998, he advised his friends and family that UPS, then a privately held company, was allowing the relatives of employees to purchase stock through the employee. Foley admits that he offered to buy UPS stock for McKenna. Foley admits that McKenna gave him $100,000 to buy UPS stock. Foley admits that in 1999, he bought $100,000 worth of UPS and OPL stock on behalf of McKenna. Foley admits that pursuant to his divorce settlement agreement he was directed to transfer 4,340 shares of UPS stock to McKenna. Foley admits that he never transferred 4,340 shares of UPS stock to McKenna; instead, on July 2, 2003, Foley liquidated the stock by selling McKenna's 4,340 shares of UPS stock for $64.20 a share. Foley admits that he obtained proceeds in the amount of $278,628 from the sale. Foley admits that the UPS stock "technically" belonged to McKenna. Foley admits that

---

[10] Fla. Stat. §812.014(1).

the proceeds are all gone, because he spent the money. Finally, Foley admits that it was his decision to keep the proceeds, because he was angry at McKenna's wife.

Plaintiff has fulfilled all conditions precedent to maintaining an action for civil theft by sending Foley a timely written demand for trebles damages pursuant to Fla. Stat. §772.11(1).[11] Foley admits that he did not respond to McKenna's written demand for treble damages.

Based on these undisputed facts, the Court finds that Plaintiff has proven by clear and convincing evidence that Foley has violated Fla. Stat. §812.014, by knowingly obtaining and using the property of McKenna with the intent to, either temporarily or permanently, deprive McKenna of the right to 4,340 shares of UPS stock and the benefit of the proceeds in the amount of $278,628 obtained from the sale of the McKenna UPS Stock. The Court further finds that Plaintiff has proven by clear and convincing evidence that Foley has appropriated the McKenna UPS Stock, and the proceeds therefrom, for his own use.

Moreover, pursuant to Fla. Stat. §772.11(1), any person that proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of §§812.012-812.037, then such person has a cause of action for threefold the actual damages sustained, and is entitled to attorney's fees and court costs in the trial and appellate courts.[12] Accordingly, McKenna has a cause of action for threefold the actual damages

---

[11] See Dkt. #1, Page 54-55.

[12] See Fla. Stat. §772.11(1).

sustained herein in the amount of $835,884 ($278,628 x 3), plus attorney's fees and costs incurred in the litigation of this case.

Foley has offered no evidence showing that a genuine issue of material fact exists. For these reasons, the Court finds as a matter of law that summary judgment should be granted in favor of Plaintiff, William McKenna, and judgment should be entered against Defendant, Gary P. Foley, in the amount of $835,884, plus attorney's fees and costs.

### III.    Count III - Conversion.

"In order to establish a claim for conversion of money under Florida law, a plaintiff must demonstrate, by a preponderance of the evidence: (1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." U.S. v. Bailey, 288 F.Supp.2d 1261, 1264 (M.D. Fla. 2003); see also Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So.2d 858 (Fla. 1948).

The Court finds that Plaintiff has established by a preponderance of the evidence that: Plaintiff transferred $100,000 to Foley; Foley used the $100,000 to buy UPS and OPL stock on McKenna's behalf; Foley purchased $100,000 worth of UPS and OPL stock and held it under his name from 1999 through 2003; Foley failed to transfer the UPS stock to McKenna; on July 2, 2003, Foley liquidated the UPS stock without McKenna's knowledge or authority; McKenna was entitled to the immediate possession of the proceeds in the amount of $278,628 (4,340 shares at $64.20 per share) from the sale of the UPS stock; McKenna

demanded the return of the proceeds retained by Foley; Foley refused to return the proceeds; and finally, Foley spent all of the proceeds.

Foley has offered no evidence showing that a genuine issue of material fact exists. Based on the undisputed facts, the Court concludes as a matter of law as follows: the stock proceeds in the amount of $278,628 obtained by Foley from the sale of the McKenna UPS Stock are readily identifiable; McKenna was entitled to an immediate right of possession of the proceeds; Foley converted the property of McKenna when Foley liquidated the UPS stock belonging to McKenna without McKenna's authority, and then, wrongfully retained and used the proceeds; finally, McKenna demanded the return of the money proceeds from the sale of the McKenna UPS Stock, but Foley did not respond to McKenna's demand.

Accordingly, summary judgment should be granted in favor of Plaintiff, William McKenna, as to Count III.[13]

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. #12) is **GRANTED** as to Count II (Civil Theft) and Count III (Conversion) and **DENIED** without prejudice as to Count I (Breach of Third Party Beneficiary Contract).

2. The Clerk is directed to enter **JUDGMENT** in the amount of **$835,884.00** in favor of Plaintiff, William McKenna, and against Defendant, Gary P. Foley.

---

[13] The Court has not awarded damages under Count III, since additional monetary damages for the same act would constitute a double recovery.

3. The Court retains jurisdiction to consider the amount of reasonable statutory attorney's fees and costs that should be awarded to Plaintiff pursuant to Fla. Stat. §772.11. Plaintiff shall file affidavits, time sheets and invoices substantiating his reasonable attorney's fees and costs incurred in the litigation of this matter within twenty (20) days of the date of this Order.

4. The Clerk is further directed to **CLOSE** this case and terminate any pending motions.

**DONE** and **ORDERED** in Tampa, Florida on June 9, 2006.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-2200.msj.wpd